Caruthers **ALEXANDER**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 70882.

Court of Criminal Appeals of Texas,
En Banc.

April 28, 1993.

Rehearing Denied Sept. 29, 1993.

George Scharmen (court appointed), San
Antonio, for appellant.

Fred G. Rodriguez, Former Dist. Atty.,
and Lyndee Bordini, Mark Luitjen & Laurie
A. Booras, Asst. Dist. Attys., San Antonio,
Robert Huttash, State's Atty., Austin, for
State.

## OPINION

BAIRD, Judge.

Appellant was convicted of capital murder pursuant to Tex.Penal Code Ann. § 19.-03(a)(2).[1] The jury affirmatively answered the punishment issues submitted pursuant to Tex.Code Crim.Proc.Ann. art. 37.071(b)(1) and (2).[2] Punishment was assessed at death. *Id.* at (e). Appeal to this Court is automatic. *Id.* at (h). We will affirm.

In his fifth point of error, appellant challenges the sufficiency of the evidence to support his conviction. Specifically, appellant contends the evidence was insufficient to prove the murder was committed in the course of committing or attempting to commit aggravated rape.

This is the second time that appellant has appeared before this Court for a conviction in this cause. The State, citing the law of the case doctrine, attempts to rely on our analysis of the evidence in appellant's first appeal to support the State's contention that the evidence is sufficient to support appellant's conviction.[3] Although appellant's first conviction was reversed, we held the evidence was sufficient to support his capital murder conviction. *Alexander v. State*, 740 S.W.2d 749 (Tex.Cr.App.1987). However, for the following reasons, we find the law of the case doctrine is inapplicable to a sufficiency point of error.

In *Granger v. State*, (Tex.Cr.App. No. 1109–91, delivered February 10, 1993), slip op. pgs. 3–4, [613 So.2d 15 (table)] we held:

We have previously recognized that "[u]nder the doctrine of 'the law of the case,' where determinations as to questions of law have already been made on a prior appeal to a court of last resort, those determinations will be held to govern the case throughout all its subsequent stages, including a retrial and a subsequent appeal." *Granviel v. State*, 723 S.W.2d 141, 147 (Tex.Cr.App.1986), cert. denied, 484 U.S. 872 [108 S.Ct. 205, 98 L.Ed.2d 156] (1987). The doctrine is required by neither constitution nor statute, however; it is merely a court-made prudential doctrine designed to promote judicial consistency and efficiency. See *Hudson v. Wakefield*, 711 S.W.2d 628, 630 (Tex.1986). As such, it should be disregarded when compelling circumstances require a redetermination of the point of law decided on the prior appeal. As our sister court explained a century ago, "[t]he question as to whether [a] court will reconsider, upon a second appeal, what [was] formerly decided in the same case, must always be addressed to the discretion of the court, and according to the particular circumstances of that case." *Kempner v. Huddleston*, 90 Tex. 182, 37 S.W. 1066, 1067 (1896).

Therefore, while the law of the case doctrine is designed to apply to the retrial of a case, we have recognized situations where the doctrine may not be appropriate.

1. The offense was alleged to have been committed on or about April 23, 1981. At that time Tex. Penal Code Ann. § 19.03(a)(2) provided:

   § 19.03. Capital Murder
   (a) a person commits an offense if he commits murder as defined under Section 19.-02(a)(1) of this code and:

   *   *   *   *   *   *

   (2) the person intentionally commits the murder in the course of committing or attempting to commit ... aggravated rape ...

2. Tex.Code Crim.Proc.Ann. art. 37.071 was amended effective September 1, 1991. However, all references herein refer to the Code of Criminal Procedure in effect at the time of appellant's trial.

   Tex.Code Crim.Proc.Ann. art. 37.071(b)(1) and (2) provides:

   (b) On conclusion of the presentation of the evidence, the court shall submit the following ... issues to the jury:
   (1) whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that the death of the deceased or another would result;
   (2) whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society[.]

3. The law of the case is defined in *Black's Law Dictionary* as follows: "The decision, judgment, opinion or rulings on former appeal or writ of error become 'law of the case.' ... The doctrine expressed practice of courts generally to refuse to reopen what has been decided ... it expressed the rule that final judgment of highest court is final determination of parties' rights."

■ Application of the law of the case doctrine is never appropriate when sufficiency of the evidence is challenged after a retrial. Application of the law of the case doctrine in the face of a sufficiency challenge would create an impermissible presumption of guilt. To hold otherwise would render the presumption of innocence at a second trial a mere pretense, in violation of Tex.R.App.P. 32, which states:

Granting a new trial restores the case to its position before the former trial including, at the option of either party, arraignment or pretrial proceedings initiated by that party. *The prior trial shall not be regarded as a presumption of guilt,* nor shall it be alluded to in argument or in the presence of jury.

(Emphasis added.)

A second reason not to apply the law of the case doctrine is that a defendant may be retried under a theory of prosecution different than the one applied in the original trial. When the retrial is under a theory of prosecution different than that in the original prosecution, the State is necessarily required to prove elements different from those in the original prosecution. Therefore, a challenge to the sufficiency of the evidence will require an analysis different than that in the original appeal.

A third reason not to apply the law of the case doctrine is that a previous conviction may have been found sufficient on the basis of inadmissible evidence. We said in *Bobo v. State,* 843 S.W.2d 572 (Tex.Cr.App.1992):

... While the Court of Appeals correctly found the State's evidence to prove the prior conviction was legally inadmissible, that does not effect the sufficiency of the evidence. When evaluating the sufficiency of the evidence the appellate court must look at all the evidence, whether properly or improperly admitted.

*Id.,* at 575–6.

Therefore, it is possible for an appellate court to reverse a case on the basis of inadmissible evidence, but prior to reversal to find that the evidence, including the inadmissible evidence, was sufficient to establish guilt. On retrial, the inadmissible evidence will be excluded and, therefore, the evidence will not be the same in a subsequent appeal. For example, appellant's first conviction was reversed because appellant was improperly impeached at the guilt/innocence phase of the trial with evidence that he falsified "a statement about his prior convictions when purchasing a firearm (revolver) several months before the offense in 1981." *Alexander,* 740 S.W.2d at 764. However, evidence of appellant's falsified statement did not come in at the guilt/innocence phase of the second trial; nor did appellant and his common-law wife testify as they had in the first trial. Therefore, in addition to the inadmissible evidence that was not introduced in the second trial, there was a substantial amount of admissible evidence that was not offered at the second trial.

For these reasons, we hold the law of the case doctrine may never be applied to a point of error challenging the sufficiency of the evidence.

We now address the merits of appellant's point of error. When sufficiency of the evidence is challenged, "[t]his Court must review *all* of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt." *Jones v. State,* 833 S.W.2d 118, 122 (Tex.Cr.App.1992) (emphasis in original). Additionally, because the evidence in this case was circumstantial, and because this case was tried before our decision in *Geesa v. State,* 820 S.W.2d 154 (Tex. Cr.App.1991), its disposition is governed by the rule in *Carlsen v. State,* 654 S.W.2d 444, 447 (Tex.Cr.App.1983), which states:

[A] conviction based on circumstantial evidence must exclude every other reasonable hypothesis except the guilt of the accused. (Citations omitted.) It is not required that the circumstances should, to a moral certainty, actually exclude every hypothesis that the act may have been committed by another person, but that the hypothesis is a reasonable one consistent with the circumstances and the facts proved. (Citations omitted.) Each fact need not point directly and independently to the guilt of the accused, as the cumulative effect of all

the incriminating facts may be sufficient to support the evidence. (Citations omitted.) However, proof which amounts only to a strong suspicion or mere probability is insufficient. (Citations omitted.)

In order to resolve appellant's fifth point of error, a recitation of the facts, as adduced in appellant's second trial, is necessary. The deceased left for work at the Wrangler, a country-western club, between 6:00 and 6:30 the night of April 22, 1981. She drove a brown 1980 Honda that had "[n]o damage of any kind." The deceased remained at work until about 3:00 a.m. the morning of April 23rd. Afterward, the deceased had breakfast at Jim's restaurant with co-worker Ricardo Solis. After breakfast, Solis walked the deceased to her car. The deceased drove away at around 4:00 a.m., while Solis was speaking to a friend. The deceased's abandoned car was discovered at around 4:20 a.m. The car had suffered damage to the right rear bumper and tail light. There was white paint on the damaged portion of the Honda.

At 6:30 a.m., two witnesses saw a large white van with blue lettering at the location where the deceased's body was later discovered. From these witnesses' descriptions, police were able to locate a white van with "ABBEY MEDICAL" stenciled on the side. The two witnesses identified the van as looking like the van they saw that morning. One of the witnesses had also seen someone moving inside the van. At 6:45 a.m., the deceased's nude body was discovered lying on the street where the van had been parked.

The exterior of the van was white except for brown paint and new scratches which appeared on the bumper. Scientific analysis demonstrated that the brown paint on the bumper of the van was identical to the Honda's. The damage to the Honda started eighteen and one-half inches from the ground, which was also the height of the van's bumper. Appellant told police officers that he had the van the night of the murder. Police officers testified that the van had not been hot-wired and that there was no evidence of tampering to indicate someone had driven the van without the keys. Moreover, appellant never reported the van missing or stolen. Finally, there were only two sets of keys to the van. Appellant had one set, as he had been assigned the white van. The other set was in the desk of Abbey Medical's dispatcher, who testified that he was the only other person who drove the white van and that the keys in his desk were not marked in any way to show to which of two vans they went.

An earring found in the van exactly matched the earring found on the body of the deceased. A blood stain was found on the floor of the van. A belt found in the van belonged to the deceased. There was also a quilt with blood and semen stains.

The location where the deceased's body was found was approximately a half mile, or about five or six blocks, from appellant's father's home. The deceased's hands and feet had been bound, and there was a piece of cloth stuffed in her mouth. A rope was around the deceased's neck. Rope burns on her wrists indicated that the deceased struggled at the time she was bound. The deceased died of asphyxia as a result of a ligature strangulation. The deceased had also suffered a superficial knife wound and a scratch to the face. Stomach contents indicated that the deceased had died thirty to ninety minutes after leaving the restaurant at 4:00 a.m. There were a large number of sperm present in the deceased's vagina, indicating recent sexual intercourse. The deceased and her husband last had intercourse three or four days before her death.

The medical examiner testified that intercourse could have taken place as early as 1:00 a.m. A "black hair fragment of Negroid origin" was found among the pubic hair combings of the deceased. Because the root and the end of the hair fragment were missing, it was not possible to determine conclusively whether or not the hair fragment was appellant's. However, appellant was Abbey Medical's only African-American employee.

A blood sample taken from the floor of the van was type O, the same type as the deceased's. There was not enough blood in the sample to narrow it down any further than type O. Another blood stain was found on a quilted moving pad taken from the van. That blood stain exactly matched the blood

characteristics of the deceased. Only one percent of the population would have blood characteristics matching those of the deceased. The mixture of seminal and vaginal fluids from the pad were ABO type O, PGM 1. Both deceased and appellant are ABO type O and PGM 1. The vaginal swab of the deceased was positive for semen and was ABO type O.

Appellant contends the evidence is insufficient to prove he had sexual intercourse with the deceased, and that the State therefore failed to prove that appellant committed aggravated rape. The charge to the jury on aggravated rape appeared as follows:

A person commits rape if he has sexual intercourse with a female not his wife, without the female's consent if he intentionally or knowingly compels her to submit or participate by force that overcomes such earnest resistance as might reasonably be expected under the circumstances; or, if he compels her to submit or participate by any threat communicated by action, words, or deeds, that would prevent resistance by a woman of ordinary resolution under the same or similar circumstances, because of a reasonable fear of harm.

A person commits aggravated rape if he commits rape, as defined above and he causes serious bodily injury or attempts to cause death to the victim in the course of the same criminal episode.

"In the course of committing aggravated rape" means conduct that occurs in an attempt to commit, during the commission, or in immediate flight after the attempt or commission of aggravated rape.

Appellant specifically contends:

There was no evidence adduced to suggest that appellant and no other person had engaged in sexual intercourse with the deceased at or near the time of her death. She had access to at least two other men during the period of time immediately preceding her death: her husband and Ricardo Solis, a friend at work. That seminal fluid mixed with vaginal fluid may have been found in the van, suggests only that seminal and vaginal fluid was released from the vagina of someone with de-

ceased's blood type at sometime while she was in the van. There was no disproof by the State that the seminal fluid was from no other person than the appellant. Penetration of the deceased's vagina by appellant has not been proven beyond a reasonable doubt. Given the state of the evidence it is just as reasonable to believe that the deceased had sexual intercourse with her husband or friend as with the appellant prior to her death since there is no *proof* that she had intercourse with appellant. Consequently the State, having failed to prove the aggravated rape, has failed to prove capital murder as alleged in the indictment and charged by the court.

Appellant's brief pgs. 21–22.

█ For the following reasons, we reject appellant's contentions. The State has to disprove every other *reasonable* hypothesis except for the guilt of the accused. *Earhart v. State,* 823 S.W.2d 607, 616 (1991). Moreover, we said in *Nilsson v. State,* 477 S.W.2d 592, 595 (Tex.Cr.App.1972), "Penetration may be proved by circumstantial evidence." We held in *Carlsen,* 654 S.W.2d at 449 (opinion on rehearing), that "if the evidence supports an inference other than the guilt of the appellant, a finding of guilt beyond a reasonable doubt is not a rational finding." Here, no other inference is supported. Not only does the evidence point to the guilt of appellant in the murder of the deceased, but it is not reasonable to conclude the deceased had intercourse with anyone other than appellant the morning of her death. The evidence shows that sperm was deposited in the deceased's vagina between 1:00 a.m. and the time the body was found at 6:30 a.m. Deceased's husband testified that he had not had intercourse with the deceased for three or four days prior to her death. Additionally, the last time he saw the deceased was around 6:00 p.m. the evening prior to her death. The sperm found in the deceased's vagina could not have been her husband's. Solis' undisputed testimony shows that he was with deceased at work until 3:00 a.m.; that he and the deceased drove to Jim's restaurant in separate cars; that he had breakfast with her in a public place, where other co-workers were present,

until 4:00 a.m.; and that deceased drove off while Solis was talking with a friend. There is nothing in the record from which to infer that Solis had intercourse with the deceased in the hours preceding her death.

The condition in which the deceased was found indicates that her killer was the one who had intercourse with her. The deceased was nude, bound, and gagged at the time her body was found, consistent with a sexual assault. Her belt and earring were found in the van appellant admitted to possessing the night the deceased was murdered. A blood stain which matched the deceased's blood type and seminal stains consistent with both the deceased's and appellant's blood type were found on a quilted pad in the same van. A blood stain on the floor of the van matched the deceased's blood type. A negroid hair fragment was found in the pubic hair combings of the deceased, and neither Solis nor the deceased's husband were African–American.

We conclude that the evidence does not support a finding that anyone other than appellant had intercourse with the deceased. Because a rational jury could have found that appellant committed the offense of capital murder as alleged in the indictment, appellant's fifth point of error is overruled.

■ In his first point of error, appellant contends the trial judge erred in overruling his challenge for cause to veniremember Policarpo Rodriguez Casarez, because Casarez could not consider the full range of punishment for the offense of capital murder in violation of *Cumbo v. State*, 760 S.W.2d 251 (Tex.Cr.App.1988), and *Pierce v. State*, 604 S.W.2d 185, 187 (Tex.Cr.App.1980), and Tex. Code Crim.Proc.Ann. art. 35.16(c)(2).

The voir dire of this veniremember, concerning the second special issue was as follows:

Appellant: ... Assume that, that you found [the defendant] guilty of killing somebody while they were committing one of those other offenses, okay? Would you then say, in every case, you know, yes, he is going to be a continuing threat to society because he did that?

Casarez: Yes. Because it might be—

Appellant: So, in any case where you found that someone had committed capital murder, would you think they would probably be a continuing threat to society?

Casarez: I would say yes because he might do it again.

Appellant: Okay. And you understand that issue where the state has to prove that to you? They don't have to show you that they are going to commit that same crime again, they just have to show you that it would be any—

Casarez: Any other crime?

Appellant: Any one that was one of violence, okay?

Casarez: Yes.

Appellant: Only probably, not definitely. Okay?

And are you saying that if you found somebody guilty of capital murder you would always answer that second issue yes?

Casarez: Yes.

Appellant: Your Honor, I would make a challenge.

The State: Mr. Casarez, the one thing we have to keep in mind is when you come in here a lot of people have an idea of what they think a capital murder is, from reading the paper. You come in with a lot of ideas. And we have an idea of what a certain type of criminal is.

And the problem is there is a million different types of people that could commit it all the way from—it could be a seventy year old man who has never been in any trouble in his entire life. Okay? Has been to church every Sunday.

Or could be a seventeen year old kid who got scared while they were committing a robbery and killed someone and that alone, the seriousness of the offense [m]ight scare them into never committing another offense again for the rest of their life.

And so, right now, you don't know. Or all we are doing is talking about a hypotheses (sic). It could be the seventeen year old, could be the seventy year old or could

be a hardened criminal who has been in trouble—everyday he wakes up, he does something bad, okay? Or something in between (sic).

And all we want to make sure is you can keep an open mind and wait until you hear the fact and wait until you find out the facts of the case, if it is somebody' never been in any trouble before or what the circumstances are.

Are you able to do that, wait until you hear all the circumstances and listen to all the evidence?

Casarez: Yes.

The State: Okay. And not automatically answer it yes or no, but wait? You found someone guilty and then you have to wait and seé who that person is. Can you do that?

Casarez: Yes.

The State: And still require the state to prove the answer to that question should be yes and not automatically answer it?

Casarez: Not automatically.

The State: Okay. It will depend on the circumstances, right?

Casarez: Circumstances.

The State: I don't have any other questions.

Appellant: Renew the challenge.

Trial judge: Overruled.

In *Felder v. State*, 758 S.W.2d 760, 766 (Tex.Cr.App.1988), we held:

In evaluating a prospective juror's response, we recognize that we are faced with a cold record and we, therefore, give deference to the trial judge who was in a position to hear and see the potential juror. (Citations omitted.) We must exam-ine the record as a whole to determine whether the prospective juror was truly disqualified and assay the voir dire examination with deference to the trial court and its ruling. (Citation omitted.)

We held in *McCoy v. State*, 713 S.W.2d 940, 945 (Tex.Cr.App.1986): "This rule is especially appropriate when we are faced with seemingly equivocating responses." In *McCoy* we found that, giving due deference to the trial judge, and given the record then before us, the equivocating veniremembers "were not subject to a challenge for cause despite their initial responses." *Id.*

In *Moody v. State*, 827 S.W.2d 875 (Tex. Cr.App.1992), two veniremembers gave conflicting answers about how they would answer the second punishment issue, ultimately concluding that they would not automatically answer the issue "yes." We held: "It is not error on the part of the trial court to deny a challenge for cause to a veniremember who gives equivocal answers on whether or not he could answer a punishment issue in the negative." *Id.* at 886.

In the case before us, veniremember Casarez ultimately said that he would not automatically say yes to punishment issue number two. Therefore, we defer to the trial judge's judgment in overruling appellant's challenge for cause. Appellant's first point of error is overruled.

■ In his second, third and fourth points of error, appellant contends the trial judge erred in overruling appellant's objections to the State's peremptory challenges of veniremembers Johnny Steve Williams, Anne Coleman, and Walter Bowman, contending the State made its peremptory challenges for racially discriminatory reasons.[4]

4. The State contends appellant's *Batson* motions for veniremembers Williams and Bowman were not timely. In this case, individual jurors were sworn at the conclusion of the voir dire of each individual veniremember chosen. The State contends the first time Williams and Bowman were brought up in the *Batson* context was at the *Batson* hearing, which was held after the last juror had been sworn.

We held in *Hill v. State*, 827 S.W.2d 860, 864 (Tex.Cr.App.1992):

... For the objection to be timely it must have been raised "[a]fter the parties ... deliv-ered their lists ... and before the court ... impanelled the jury." Art. 35.261(a), V.A.C.C.P. A jury is considered "impanelled" when the members of the jury have been both selected and sworn. (Citations omitted.)

The State cites our original opinion in *Cooper v. State*, 791 S.W.2d 80 (Tex.Cr.App.1990), for the proposition that "[a]ny objections that a peremptory challenge was based on race should have been made" prior to the time the final juror has been sworn. State's brief pg. 5. The State is correct in its assertion that, under Tex.Code Crim.Proc.Ann. art. 35.261, the *Batson* challenge

At the *Batson*[5] hearing the State offered the following racially-neutral reasons offered by the State for striking veniremembers Williams, Coleman, and Bowman. The reasons the State gave for striking Williams were "that he had problems with the death penalty" and he was wearing sunglasses throughout his voir dire examination. At one point during Williams' voir dire examination the trial judge disqualified Williams because Williams stated his feeling about the death penalty was such that he would not be able to give appellant a fair trial; subsequently, appellant was allowed to rehabilitate Williams. The State struck Coleman because she had firmly held "religious beliefs against the death penalty" and because she was "very hostile" toward the prosecutor questioning her, as demonstrated by "her facial expression, even body language, with her arms folded and peering." Bowman was struck because "he took twice as long" to fill out the jury questionnaire, "[a]t least half an hour further on a very simple questionnaire which should be very simple answers." The State also asserted that Bowman was hostile toward the State: "When he would have a question he would turn to the judge as if he didn't believe what [the State] was telling him and would ask the court for clarification" and Bowman's "[b]ody language was very hostile as it appeared to us." The State was also concerned that Bowman would require

"a very, very high burden of proof, higher than beyond a reasonable doubt" and that he could consider the death penalty only if there was not any doubt of appellant's guilt.

In *Cook v. State,* 858 S.W.2d 467, 472 (Tex.Cr.App. 1993), we cited with approval the following language from *Earhart v. State,* 823 S.W.2d 607, 624 (Tex.Cr.App.1991), where we held:

> The trial court implicitly found that the State offered race-neutral reasons for peremptorily striking veniremember Lang. This Court must accept that finding unless we determine that it is clearly erroneous. *Whitsey v. State,* 796 S.W.2d 707 (Tex.Cr. App.1989) (opinion on reh'g). Under the clearly erroneous standard, we are to accept the trial court's account of the evidence if it is plausible in light of the record viewed in its entirety. *Anderson v. Bessemer City,* 470 U.S. 564, 574–5, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). Moreover, because a determination of purposeful discrimination usually depends on assessment of credibility, the content of the explanation and all other relevant surrounding facts and circumstances, the trial court determination is entitled to great deference. *Tennard v. State,* 802 S.W.2d 678 (Tex.Cr.App.1990).

In light of the foregoing standard, we find the trial judge's actions in overruling appel-

---

to the peremptory strike of veniremember Williams was not timely made. However, there was a timely objection made at the time veniremember Bowman was peremptorily struck. At that time, appellant said, "For the purposes of *the record we would like it to reflect the venire-man was clearly a member of the minority group to which the defendant belongs.*" While this is not as well stated as one might like, it is clearly a reference to the language of Tex.Code Crim.Proc. Ann. art. 35.261, and as such it was sufficient to preserve appellant's *Batson* motion.

In our original opinion in *Cooper* we held that "appellant's *Batson* issue was properly before th[e] court for review where the motion was filed prior to the dismissal of the venire, where the prosecutor failed to object to the untimeliness of the motion and where the trial court held a hearing on the motion." *Id.* at ·82.

On motion for rehearing, we said in *Cooper* that

> ... for appellate purposes the State has no obligation at the trial level to make a contemporaneous objection to appellant's failure to make a contemporaneous objection. The fact

that the trial court proceeded to conduct a *Batson* hearing is irrelevant to the issue of whether the appellant actually preserved error. The State's obligation is to bring to the appellate court's attention the fact that the appellant was dilatory in preserving error for appellate review.

*Id.* at 83.

This holding is based on a misreading of our decision in *Tallant v. State,* 742 S.W.2d 292 (Tex.Cr.App.1987).

The facts in the instant case are somewhat like the facts in *Cooper.* While the State did object, at the *Batson* hearing, to the fact that an objection to the striking of veniremember Williams had not been timely made, the State failed to obtain an adverse ruling on that objection. In addition, the trial judge allowed the *Batson* hearing to proceed. We hold under these facts that any objection to appellant's failure to make a timely *Batson* objection was waived.

5. *See, Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

lant's *Batson* claims were not clearly erroneous. Appellant's second, third and fourth points of error are overruled.

 In his sixth point of error, appellant contends the evidence was insufficient to support an affirmative answer to the second punishment issue. In *Vuong v. State*, 830 S.W.2d 929, 935 (Tex.Cr.App.1992), we listed several factors when evaluating the sufficiency of the evidence to support an affirmative answer to the second punishment issue:

> When reviewing such a sufficiency challenge it is appropriate for this Court to consider a number of factors, including: (1) the lack of psychiatric testimony concerning future dangerousness; (2) whether the circumstances of the crime indicate the defendant engaged in the criminal conduct without the intent to murder or commit other acts of violence; (3) the extent of a defendant's prior convictions; (4) the violent nature of defendant's prior convictions and other unadjudicated offenses; (5) the age of the defendant at the time of the crime; and (6) whether the defendant was intoxicated or acting under other circumstances indicating a diminished mental capacity. (Citations omitted.) Of course, no one factor is dispositive, and the jury's affirmative answer to special issue two may withstand a sufficiency challenge notwithstanding the lack of evidence relating to one or more of these factors.

During the punishment phase, the State re-offered the evidence presented at the guilt-innocence phase of the trial and proved appellant's previous convictions for arson and involuntary manslaughter. Appellant presented mitigating evidence in the form of one character witness.

The circumstances of the crime, a brutal and premeditated act of sexual violence, leave no doubt but that appellant intended to kill the deceased. Appellant rammed the deceased's car on a deserted road at 4:00 a.m. for the apparent purpose of abducting her. Due to the superficial cuts on the deceased's neck, it appears that at some point appellant had a knife to her neck. The deceased struggled with appellant, who bound her while she was still alive. Appellant sexually assaulted the deceased and choked her with a piece of rope, embedding it in the skin of her neck, until her life was extinguished. Additionally, appellant had two prior felony convictions, one for a crime which resulted in death. There was no psychiatric testimony offered in this case; but, as we have said, lack of evidence on one or more of these factors is not dispositive. When viewed in the light most favorable to the verdict, we believe a rational trier of fact could have found the evidence sufficient to support an affirmative finding to the second punishment issue. *First v. State*, 846 S.W.2d 836, 842 (Tex.Cr.App.1992) (citing *Keeton v. State*, 724 S.W.2d 58, 61 (Tex.Cr.App.1987)). Accordingly, appellant's sixth point of error is overruled.

The judgment of the trial court is affirmed.

WHITE, J., not participating.