In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-06-00198-CR


______________________________




CAMEKA DOMONEAK SULLIVAN, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 8th Judicial District Court


Hopkins County, Texas


Trial Court No. 0518400




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Chief Justice Morriss



MEMORANDUM OPINION



 Cameka Domoneak Sullivan appeals from her conviction by the trial court on her open plea
of guilty to the offense of possession of marihuana, greater than four ounces but less than five
pounds. (1) The court sentenced Sullivan to nine months' confinement in a state-jail facility and a fine
of $2,000.00.

 On appeal, Sullivan raises one point of error, contending that the sentence should be set aside
and remanded for a new trial on punishment due to factual insufficiency of the evidence during the
punishment phase of her trial, citing as her sole authority the case of Alexander v. State, 866
S.W.2d 1, 9 (Tex. Crim. App. 1993). 

 In some situations, appellate courts do review the sufficiency of the evidence at punishment,
as in Russeau v. State, 171 S.W.3d 871, 878 (Tex. Crim. App. 2005), where the court looked to see
if evidence was legally insufficient to support the jury's affirmative answer to the special issue
concerning his or her future dangerousness. Similarly, jury findings on enhancement allegations at
punishment are subject to sufficiency review. McFarland v. State, 928 S.W.2d 482, 496 (Tex. Crim.
App. 1996); Barnes v. State, 876 S.W.2d 316, 322 (Tex. Crim. App. 1994); Mikel v. State, 167
S.W.3d 556, 560 (Tex. App.--Houston [14th Dist.] 2005, no pet.). (2) The case cited by counsel, 
Alexander, reviewed an affirmative finding at punishment, and thus properly applied a sufficiency
analysis to the evidence at punishment.

 In this case, however, the entirety of the argument is directed not at jury findings requiring
the State (or a defendant) to meet a burden of proof at punishment, but instead argues that the
evidence was not sufficient to allow the jury to assess the amount of punishment. That is not the
analysis used in reviewing the assessment of an amount of punishment by a fact-finder. (3) The only
method available to attack the sentence assessed by a fact-finder is to argue that it exercised its
discretion in such an unreasoning or unfair fashion as to be constitutionally unsound. Bradfield v.
State, 42 S.W.3d 350, 352 (Tex. App.--Eastland 2001, pet. ref'd); Kanouse v. State, 958 S.W.2d
509, 510 (Tex. App.--Beaumont 1998, no pet.). (4) As the punishment assessed was within the
applicable statutory range, the issue as it may be presented is whether the punishment assessed was
grossly disproportionate and thus unconstitutional.

 To preserve a disproportionality claim for appellate review, Sullivan must have presented to
the trial court a timely request, objection, or motion that stated the specific grounds for the desired
ruling, if not apparent from the context. Tex. R. App. P. 33.1(a)(1); Mosley v. State, 983 S.W.2d 249,
265 (Tex. Crim. App. 1998) (op. on reh'g); Nicholas v. State, 56 S.W.3d 760, 768 (Tex.
App.--Houston [14th Dist.] 2001, pet. ref'd) (failure to complain to trial court about consecutive
sentencing waived claim of error). No objection or motion in this case, either during the trial
proceeding or in the motion for new trial, sets out any constitutional complaint. Thus, the claimed
error has not been preserved for our review. 

 We further note that, even if the contention had been preserved for review, there is no
evidence in the record comparing the sentences imposed on persons in Texas with sentences imposed
against defendants in other jurisdictions who committed a similar offense. Thus, the issue could not
prevail in any event. See Mullins v. State, 208 S.W.3d 469, 470 (Tex. App.--Texarkana 2006, no
pet.).

 There being no other issues before us, we affirm the judgment of the trial court.


 Josh R. Morriss, III

 Chief Justice


Date Submitted: June 7, 2007

Date Decided: June 14, 2007


Do Not Publish



1. See Tex. Health & Safety Code Ann. § 481.121(b)(3) (Vernon 2003).
2. Similarly, other offenses in the Texas Penal Code place the burden of proof on the defendant
to prove certain issues by a preponderance of the evidence at the punishment phase of trial, and a
type of sufficiency review is also appropriate for those issues--for example, release of a kidnapping
victim in a safe place. See Tex. Penal Code Ann. § 20.04(d) (Vernon 2003); Cleveland v. State,
177 S.W.3d 374, 385 (Tex. App.--Houston [1st Dist.] 2005, pet. ref'd), cert. denied, ___ U.S. ___,
126 S.Ct. 1774 (2006).
3. See, e.g., McGinn v. State, 961 S.W.2d 161, 169 (Tex. Crim. App. 1998). 
4. See Hyde v. State, 723 S.W.2d 754, 755 (Tex. App.--Texarkana 1986, no pet.) (holding that
we had no authority to review the reasonableness of punishments assessed by the juries and the trial
courts of this State if within the range of punishment prescribed by statute for the offense, except
under a disproportionality analysis).


ad occurred. See Davis v. State, 947 S.W.2d 240, 242–43 (Tex. Crim. App.
1997); Singleton, 91 S.W.3d at 346. This standard is an objective one: there need only be an
objective basis for the stop; the subjective intent of the officer conducting the stop is irrelevant. 
Garcia v. State, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001); Singleton, 91 S.W.3d at 346. 
            The objective standard is based on the reasoning that a reasonable officer in the same
situation would have reasonable suspicion to execute the stop and, therefore, nothing objectively
unlawful would have been done. See Singleton, 91 S.W.3d at 347; Whren v. United States, 517 U.S.
806 (1996) (the traffic violation itself constituted an objectively reasonable basis for the stop, so any
ulterior motive on the part of the officers was irrelevant). In this case, Trooper McAnarney
articulated that she observed Kimball's truck's rear license plate light was not working. Failure to
have a light that illuminates the rear license plate is a traffic violation. See Tex. Transp. Code Ann.
§ 547.322(f) (Vernon 1999). 
            Trooper McAnarney testified that, as Kimball passed her, she looked at the side of his vehicle
and noticed that his license plate light was not working. McAnarney turned off her headlights to
confirm her observation. After confirming that the license plate light was not illuminated, she turned
on her emergency light. When Kimball pulled over, McAnarney told him the reason for stopping
him. Kimball looked at the rear license plate and responded that it was not his truck. Kimball did
not claim the light was working. 
            In contrast, Glenn Hoagland, the owner of the truck and Kimball's grade school friend,
testified that the truck license plate light was working when he picked up the truck from the
impound. Joshua Matthew Perez, a passenger with Kimball, also testified that the light illuminating
the rear license plate was working. In a suppression hearing, the trial court is the sole judge of the
credibility of the witnesses and the weight to be given their testimony. Hoagland was impeached by
the State when he testified that he had been with Kimball the entire night and had not seen him have
a single drink. Kimball admitted to having a couple of drinks that night. Further, Perez admitted
he was intoxicated on the night of the arrest. The trial court could have determined Trooper
McAnarney's testimony to be more credible than that of Hoagland or Perez. 
            Based on the totality of the circumstances, the specific objective, articulable facts of
McAnarney, in light of her experience and personal knowledge, together with inferences from those
facts, were sufficient to support the trial court's finding of reasonable suspicion that a traffic violation
had occurred. This point of error is overruled. 
II.       Sufficiency of the Evidence
            In our review of the legal sufficiency of the evidence, we employ the standards set forth in
Jackson v. Virginia, 443 U.S. 307 (1979). This calls on the court to view the relevant evidence in
the light most favorable to the verdict and determine whether any rational trier of fact could have
found the essential elements of the crime beyond a reasonable doubt. Johnson v. State, 23 S.W.3d
1, 7 (Tex. Crim. App. 2000). In our review, we must evaluate all of the evidence in the record, both
direct and circumstantial, whether admissible or inadmissible. Dewberry v. State, 4 S.W.3d 735, 740
(Tex. Crim. App. 1999).
            When reviewing a challenge to the factual sufficiency of the evidence to support the
conviction, we are required to determine whether, considering all the evidence in a neutral light, the
jury was rationally justified in finding guilt beyond a reasonable doubt. Zuniga v. State, 144 S.W.3d
477, 484 (Tex. Crim. App. 2004). There are two ways in which we may find the evidence to be
factually insufficient. Id. First, if the evidence supporting the verdict, considered alone, is too weak
to support the jury's finding of guilt beyond a reasonable doubt, then we must find the evidence
insufficient. Id. Second, if—when we weigh the evidence supporting and contravening the
conviction—we conclude that the contrary evidence is strong enough that the State could not have
met its burden of proof, we must find the evidence insufficient. Id. at 484–85. "Stated another way,
evidence supporting guilt can 'outweigh' the contrary proof and still be factually insufficient under
a beyond-a-reasonable-doubt standard." Id. at 485. If the evidence is factually insufficient, then we
must reverse the judgment and remand for a new trial. Clewis v. State, 922 S.W.2d 126, 135 (Tex.
Crim. App. 1996). 
            Kimball argues the evidence is legally and factually insufficient to support the conviction
because the videotape of the arrest from the police car showed Kimball had no signs of intoxication,
because of the testimony of Hoagland and Perez that Kimball was not intoxicated, and because
Kimball was not allowed to perform the sobriety tests after his arrest.
            The definition of intoxication as provided in the jury charge was "not having the normal use
of his mental and physical faculties by reason of the introduction of alcohol, a controlled substance,
a drug, a dangerous drug, and a combination of at least two of these substances into the body." 
Trooper McAnarney testified Kimball smelled strongly of alcohol, had very thick, slurred speech,
and was very unsteady on his feet. She testified that the strong smell of alcohol was coming from
Kimball's breath and his person. Kimball admitted he had been drinking. While Kimball was
looking for his insurance card, McAnarney noticed "an 18-pack of beer sitting behind . . . the driver's
seat." She also observed 
a Bud light can that was half full, cold to the touch, sitting upright next to the
passenger seat as if it was trying to be pushed underneath it. There was an open,
approximately half full, cold to the touch, Budweiser beer can that was pushed back
in the same manner on the driver's seat.
            Further, Kimball became argumentative and uncooperative when McAnarney attempted to
conduct the field sobriety test. McAnarney asked Kimball three or four times if he would cooperate
to do the field sobriety tests, to which he replied "no," while balling up his fist. Finally, Kimball
refused to submit a breath specimen. In the light most favorable to the verdict, the evidence is
legally sufficient to support a conviction for DWI.
            Next, we review the entire record for factual sufficiency. The jurors also heard the testimony
of Hoagland, who testified Kimball had not drunk any alcohol the entire night, even though Kimball
admitted to having a couple of drinks earlier that night. Perez testified that he was intoxicated, not
Kimball. Trooper McAnarney testified regarding Kimball's thick, slurred speech, unsteady balance,
and failure to cooperate with the field sobriety test. Also, the jurors were shown the videotape of
the arrest. The jurors are in the best position to assess the credibility of the witnesses. Singleton,
91 S.W.3d at 350. Contravening evidence—the testimony of Hoagland and Perez—is sufficiently
impeached and not strong enough that the State could not have met its burden of proof. McAnarney
acknowledged that, after she arrested Kimball and placed him in handcuffs, he requested to take the
field sobriety tests. By that time, a crowd of fifteen to twenty people had gathered and McAnarney
was concerned about "safety issues." Due to safety concerns, it is not the Department of Public
Safety's policy to uncuff suspects after an arrest. The fact that McAnarney refused Kimball's request
for sobriety tests, after he had previously declined them, does not render the evidence factually
insufficient. We find the evidence is factually sufficient to support the conviction. 
            For the above stated reasons, we affirm the judgment of the trial court. 
 

                                                                        Jack Carter
                                                                        Justice
 
Date Submitted:          September 28, 2004
Date Decided:             December 1, 2004

Do Not Publish