

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-12-00158-CR

CHRISTOPHER TYRONE JOHNSON                                    APPELLANT

V.

THE STATE OF TEXAS                                                      STATE

----------

### FROM THE 16TH DISTRICT COURT OF DENTON COUNTY
### TRIAL COURT NO. F-2006-1436-A

----------

## OPINION

----------

### Introduction

Appellant Christopher Tyrone Johnson was tried for murder and convicted of the lesser-included offense of manslaughter. The jury assessed his punishment at five years' confinement, and the trial court sentenced him accordingly. In two issues, Appellant contends that the evidence is insufficient to

sustain the verdict and that the trial court erred in its charge to the jury. We overrule Appellant's first issue, sustain his second, reverse and remand.

**Facts**

Appellant and the decedent, Lemontrez Dewan Lewis (Dewan), grew up together and considered each other best friends. Dewan's cousin, Ahmad Rashad Lewis (Rashad), is Appellant's half-brother. In 2005, Appellant was diagnosed with multiple sclerosis (MS). The disease progressed very quickly. Appellant had been very athletic and had played football in high school. By 2006, his condition had deteriorated to the point that he was using either crutches with an arm brace or a walker and would require assistance from his girlfriend Linda White and her daughter. He testified,

> [T]he way I would get up the stairs is at the time I had what is called a walker, and I would go up one step, Linda White would pick up one leg and move it up, and I would hold onto the bars. I would hold onto the side railings, and she and her daughter would move my legs up the step one at a time. The daughter would have one foot, and she would have one foot. She was my legs for me, it would be the[m] moving me forward.

When asked whether he had use of his arms at that time, Appellant testified, "Yes, I had very limited use, but I did."

On February 18, 2006, Appellant was living with Linda on the third floor of a North Dallas apartment. Dewan, who was working as a long-haul truck driver at the time, was coming through Dallas on a trip and wanted to stop by and see Appellant and Rashad. Appellant, Linda, Dewan, and Rashad visited together at

2

the apartment. Their conversation was cordial for some time, but things began to change when Linda, and later Rashad and Dewan, started ridiculing Appellant and his disease by calling him names. Appellant took offense and asked Dewan to leave, who then replied, "Man, you can't make me go nowhere. You can't make me leave." Appellant put his hand on the table and told Dewan he could make him leave.

The argument escalated to the point at which Dewan threatened Appellant. Appellant testified that while they were still sitting at the table, Dewan grabbed Appellant's shirt collar, and Appellant jerked Dewan's hand away to free himself, got up, and walked into the kitchen, while asking Dewan to leave at least three times. Dewan stood up, kicked the wall, and then headed into the kitchen after Appellant.

When Appellant got to the kitchen, he grabbed a knife. Dewan followed and Appellant stabbed him in the chest. Dewan asked Rashad to take him to the hospital and then collapsed. Paramedics arrived and Dewan died on the way to the hospital. When police arrived at the apartment, Appellant confessed that he had stabbed Dewan, and Appellant was later charged with murder.

### Evidence of Recklessness is Sufficient

In his first issue, Appellant argues that the evidence is insufficient to show he acted recklessly in stabbing Dewan. Section 19.04 of the Texas Penal Code provides that a person commits manslaughter if he recklessly causes the death

3

of an individual. Tex. Penal Code Ann. § 19.04 (West 2011). Recklessly is defined as follows:

> A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

*Id.* § 6.03(c) (West 2011).

Appellant argues that it was unreasonable for the jury to infer that Appellant had acted recklessly because no evidence was presented to support an inference that Appellant foresaw the risk and then made a conscious decision to ignore it. Appellant argues that, rather than he, it was Dewan who, seeing the knife and recognizing the inherent danger, disregarded that danger and lunged toward him for the knife.

Appellant's half-brother Rashad described the stabbing:

> By that time, Dewan had walked up on the counter, and they was still talking.

> I don't – my brother picked up the knife, and he didn't lunge at Dewan. He – it was a simultaneous – it was – when my brother picked up the knife, he was holding it like so, and when he was holding it, he was talking to Dewan, and Dewan was talking, like, what you going to do with the knife?

> . . . .

> Dewan reached for the knife and simultaneous, when he reached for the knife, my brother extended his arm and it happened.

Appellant argues that his picking up the knife did create a risk but that it was not "substantial" nor was it "unjustifiable." He argues that when a reasonable person who does not have the physical ability to run away is pursued by an enraged person who is substantially bigger than he and that reasonable person cannot physically leave, the person does what he can to defend himself. Appellant's picking up a knife, he argues, was not a "substantial and unjustifiable" risk for purposes of finding Appellant guilty of acting recklessly, and consequently, the evidence is insufficient to support the conviction. Nor, Appellant argues, could he have consciously disregarded the risk because the act of picking up the knife was in self-defense, to protect himself in a situation with an enraged man who was much bigger and in better physical condition than Appellant.

The State argues that Appellant asks us to view the evidence in a light most favorable toward Appellant, rather than employing the appropriate standard of appellate review which is to review the evidence in the light most favorable to the verdict. The State argues that instead of showing how the evidence of recklessness is insufficient, Appellant merely restates his claims of self-defense. The State points out that the jury had already rejected Appellant's claim of self-defense.

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to

determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789 (1979); *Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013); *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Blackman v. State*, 350 S.W.3d 588, 595 (Tex. Crim. App. 2011).

The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Winfrey*, 393 S.W.3d at 768; *Wise*, 364 S.W.3d at 903. Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). Instead, we determine whether the necessary inferences are reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict. *Sorrells v. State*, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S.Ct. at 2793; *Wise*, 364 S.W.3d at 903. The standard of review is the same for direct and circumstantial evidence cases; circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor. *Isassi*, 330 S.W.3d at 638; *Hooper v. State*, 214 S.W.3d 9,

6

13 (Tex. Crim. App. 2007). In reviewing the sufficiency of the evidence, "the appellate court must look at all the evidence, whether properly or improperly admitted." *Miles v. State*, 918 S.W.2d 511, 512 (Tex. Crim. App. 1996), *cert.denied*, 511 U.S. 1100 (1994) (quoting *Alexander v. State*, 866 S.W.2d 1, 3 (Tex. Crim. App. 1993)).

As we have previously explained, circumstantial evidence is generally needed to prove a culpable mental state, and because the culpable mental state generally must be inferred from the circumstances surrounding the offense, the trier of fact may infer the defendant's culpable mental state from relevant evidence tending to prove its existence. *Davis v. State*, 955 S.W.2d 340, 349 (Tex. App.—Fort Worth 1997, pet. ref'd) (citing *Hernandez v. State*, 819 S.W.2d 806, 810 (Tex. Crim. App. 1991), *cert. denied*, 504 U.S. 974 (1992)); *see Dillon v. State*, 574 S.W.2d 92, 94 (Tex. Crim. App. [Panel Op.] 1978).

The culpable mental state of "reckless" is satisfied by evidence indicating that the defendant consciously disregarded a known, substantial, and unjustifiable risk that serious bodily injury would occur—a risk that if disregarded constitutes a gross deviation from the standard of care an ordinary person would exercise under the same circumstances. *Davis*, 955 S.W.2d at 348–49; *see Hayes v. State*, 728 S.W.2d 804, 809 (Tex. Crim. App. 1987) (op. on reh'g). Reckless conduct "involves conscious risk creation, that is, [that] the actor is aware of the risk surrounding his conduct or the results thereof, but consciously

7

disregards that risk." *Davis*, 955 S.W.2d at 349 (quoting *Aliff v. State*, 627 S.W.2d 166, 171 (Tex. Crim. App. 1982)).

Appellant admitted that he was upset and angry about the names he was being called that evening and felt that Dewan, Rashad, and White were ganging up on him. Appellant picked up a kitchen knife and pointed it toward Dewan. His expressed intent was to protect himself. The jury reasonably could have inferred from the circumstances that Appellant chose a sharp knife or was aware that the knife he had chosen was sharp enough to pierce Dewan's flesh. Appellant repeatedly denied that he had intended to kill Dewan. The jury could have believed he pointed the sharp knife toward Dewan but with no intent to kill him.

The island and the kitchen sink were between Appellant and Dewan when the stabbing occurred. Although Appellant suggested Dewan walked into the knife, he later admitted he had moved toward Dewan "a tad bit" with the knife. As Appellant moved toward Dewan "a tad bit" with the knife, his work ID badge fell into the sink, indicating to a greater or lesser extent that Appellant had lunged over the sink with the knife to stab Dewan. The autopsy revealed that the knife penetrated Dewan's clothing, skin, his muscle, fat, and then through the fifth rib, which, as Dr. Barnard testified, is a hard object. The knife cut directly into Dewan's heart. The jury reasonably could have concluded that Dewan's injuries were inconsistent with his having walked into the knife. Additionally, the jury reasonably could have concluded that Appellant was aware of the inherent danger of moving toward Dewan with a sharp knife pointed toward Dewan while

8

Dewan was moving toward Appellant when both men were angry and very emotional. And based on the record as a whole, the jury would be warranted in concluding that Appellant was aware he risked causing serious injury to Dewan and consciously disregarded that risk and that his actions constituted a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from Appellant's standpoint.

We hold that the evidence is sufficient to support the jury's verdict and we therefore overrule Appellant's first issue.

**Properly Objected-to Charge Error was Harmful**

Although Appellant frames his second issue as inaccurately instructing the jury on the law relating to the lesser-included offense of manslaughter, the substance of his entire argument refers to the improper self-defense instruction, as does the State's response. We shall, therefore, consider his argument regarding alleged error in the self-defense instruction.

An appellate court must first decide whether there is error in the jury charge. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005); *Posey v. State,* 966 S.W.2d 57, 61 (Tex. Crim. App. 1998). If error exists and Appellant objected to the error at trial, we must determine whether the error caused "some harm," requiring reversal. *Abdnor v. State*, 871 S.W.2d 726, 732 (Tex. Crim. App. 1994); *Almanza v. State,* 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g).

9

The second and third pages of the charge instructed the jury on self-defense as follows:

> Now, if you find from the evidence beyond a reasonable doubt that on the occasion in question the defendant did stab the complainant, Lemontrez Lewis but you further find from the evidence that viewed from the standpoint of the defendant at the time, from the words or conduct, or both, of Lemontrez Lewis it reasonably appeared to the defendant that his person was in danger of bodily injury and there was created in his mind a reasonable expectation of fear of bodily injury from the use of unlawful force at the hands of Lemontrez Lewis and that acting under such apprehension and reasonably believing that the use of force on his part was immediately necessary to protect himself against Lemontrez Lewis's use or attempted use of unlawful force, the defendant stabbed Lemontrez Lewis with a knife to defend himself, then you will acquit the defendant and say by your verdict not guilty.

Section 2.03(d) of the penal code provides, "If the issue of the existence of a defense is submitted to the jury, the court shall charge that a reasonable doubt on the issue requires that the defendant be acquitted." Tex. Penal Code Ann. § 2.03(d) (West 2011). Self-defense is a defense. *Id.* § 9.31. The law is well established that "[t]he jury must be instructed to acquit the defendant if they believe that he was acting in self-defense or have a reasonable doubt thereof." *Barrera v. State*, 982 S.W.2d 415, 416 (Tex. Crim. App. 1998) (noting that court of appeals "properly concluded that the failure to apply the law of self-defense to the facts of the case and to instruct the jury to acquit if they held a reasonable doubt on self-defense was error"); *Russell v. State*, 834 S.W.2d 79, 82 (Tex. App.—Dallas 1992, pet. ref'd). We hold that the trial court erred by submitting a

10

charge that failed to instruct the jury on self-defense as required by section 2.03(d).

We also hold that Appellant preserved error. Our review of the record shows that the proposed charge originally contained the phrase "*or you have a reasonable doubt thereof*" such that had the proposed charge been issued, the section quoted above would have read as follows,

> Now, if you find from the evidence beyond a reasonable doubt that on the occasion in question the defendant did stab the complainant, Lemontrez Lewis but you further find from the evidence that viewed from the standpoint of the defendant at the time, *or you have a reasonable doubt thereof*, from the words or conduct, or both, of Lemontrez Lewis it reasonably appeared to the defendant that his person was in danger of bodily injury [ . . . ] then you will acquit the defendant and say by your verdict not guilty. [Emphasis added]

The State, however, objected to the phrase that we have italicized above, and the trial court, over Appellant's objection, struck it from the charge.

The record also indicates that the proposed charge originally contained the following passage, which the trial court also struck on the State's objection, and over the objection of Appellant: "If you have a reasonable doubt as to whether or not the defendant was acting in self-defense on said occasion and under said circumstances, then you should give the defendant the benefit of that doubt."

Because Appellant timely objected to error in the jury charge, we must reverse the trial court's judgment if the error in the charge was calculated to injure Appellant's rights. *Almanza*, 686 S.W.2d at 171. We examine the entire record to determine whether Appellant suffered some harm as a result of this

11

error.  *Arline v. State*, 721 S.W.2d 348, 352 (Tex. Crim. App. 1986).  The actual degree of harm must be assessed in light of (1) the entire jury charge; (2) the state of the evidence, including the contested issues and weight of probative evidence; (3) the argument of counsel; and (4) any other information revealed by the record as a whole.  *Almanza,* 686 S.W.2d at 171.

Appellant testified that he had told Dewan to leave more than once, and Dewan kicked the wall and came toward the kitchen where Appellant had gone on his walker.  Appellant also testified that Dewan was so angry that his eyes were red and that he was coming toward him.  Appellant further testified that he went into the kitchen and that he knew he had to get Dewan to leave.  Appellant grabbed the knife to protect himself because Dewan was coming toward him and because Appellant did not know what was going on in Dewan's mind.  Appellant described the scene as Dewan's walking into the knife.  Appellant testified, "I didn't intend to kill my cousin. . . . I was trying to defend myself, trying to protect myself."

But Appellant also testified that he had to do something because everyone was laughing at him because he could not walk and sometimes fell down.  Dewan said that Appellant was "fat" and "acted like a handicapped little bitch."  Appellant's walker had a handbrake, and Dewan was asking him how he was going to walk if they hit the brakes, saying, "You going to fall to the floor."  Dewan grabbed for Appellant's shirt, and Appellant knew he had to get Dewan to leave.  Dewan said, "Look here, it's not like when we were kids, I'm a man, I done grew

12

up, I got bigger than you was. I got bigger than you are." When Appellant tried to distance himself from Dewan while he told him to leave and Dewan said Appellant could not make him, Dewan followed Appellant to the kitchen. Appellant testified, "He was steadily cussing at me and coming toward me, [and] I didn't know what he was going to do. I didn't know what he was going to try to do."

Although there was sufficient evidence to raise the issue of self-defense, neither the arguments of counsel nor the court's charge instructed the jury that it must acquit Appellant if it had a reasonable doubt on the issue of self-defense. The jury rejected the charge of murder but convicted Appellant of manslaughter. After reviewing the entire record, we cannot conclude that Appellant did not suffer some harm as a result of the trial court's error. Accordingly, we sustain Appellant's second issue.

## Conclusion

Having overruled Appellant's first issue and sustained his second issue, we reverse the trial court's judgment and remand to the trial court for a new trial consistent with this opinion.

/s/ Anne Gardner
ANNE GARDNER
JUSTICE

PANEL:  GARDNER, MEIER, and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  July 24, 2014