

# NUMBER 13-18-00351-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

RICO DOYLE,                                                                          Appellant,

v.

THE STATE OF TEXAS,                                                        Appellee.

On appeal from the 264th District Court
of Bell County, Texas.

# MEMORANDUM OPINION

**Before Justices Benavides, Perkes, and Tijerina**
**Memorandum Opinion by Justice Perkes**

A jury convicted appellant Rico Doyle of capital murder, and although the State

sought the death penalty, Doyle was sentenced to life imprisonment without parole in the

Institutional Division of the Texas Department of Criminal Justice. *See* TEX. PENAL CODE

ANN. §§ 12.31(a), 19.03(7). By a single issue, Doyle contends that the trial court erred by denying his *Batson* challenge.[1] *See Batson v. Kentucky*, 476 U.S. 79 (1986). We affirm.

## I. BACKGROUND

Doyle, an African American male, was charged with intentionally causing the shooting deaths of two individuals during the same criminal transaction. *See id.* § 19.03(7). Veniremembers answered a nineteen-page questionnaire consisting of 142 questions before the parties conducted individual voir dire examinations of each member.[2] *See* TEX. CODE CRIM. PROC. ANN. art. 35.17, § 2.

After the State used nearly half of its peremptory challenges to strike seven out of ten potential jurors who were African American, including all five female African Americans on the panel, Doyle raised a *Batson* challenge based on both racial and gender discrimination. The trial court asked the State for a response, and the State explained that it struck these seven members based on their responses to the questionnaires and individual examinations: four were opposed to the death penalty; one indicated that he would hold the State to a higher evidentiary standard than required under the law because this was a death penalty case; one stated that circumstantial evidence would be sufficient to convict a defendant only if "the jury is comprised of people from all walks of life and all socioeconomic backgrounds" and that both she and her husband had a prior bad experience with police; and one stated she had been falsely accused of forgery

---

[1] This case was transferred to us from the Third Court of Appeals in Austin pursuant to a docket equalization order by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001.

[2] The exact number of veniremembers is unclear from the record, but the last juror seated was venireman number 144.

in the past year and expressed a reluctance to consider the "future dangerousness" question because she did not like to judge people based on their past actions.

Doyle conceded that three members "did express some hesitance or reluctances to impose a death penalty" and therefore represented the "defense's weakest points," but Doyle countered that the other four members were "middle of the road jurors" and any concerns raised by their responses to the questionnaires "were resolved during the individual questioning." The trial court denied Doyle's *Batson* challenge, and although its racial makeup is unclear from the record, the jury consisted of five females and seven males.[3]

Doyle was convicted of capital murder, and this appeal ensued.

## II. APPLICABLE LAW & STANDARD OF REVIEW

The Equal Protection Clause of the United States Constitution forbids counsel from exercising peremptory strikes on the basis of race, *Batson*, 476 U.S. at 89, or gender. *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 129 (1994); *see* U.S. CONST. amend. XIV, § 1. The improper exclusion of even one juror invalidates the jury selection process and requires a new trial. *Snyder v. Louisiana*, 552 U.S. 472, 478 (2008) (citations omitted). Typically, counsel do not have to explain or justify their peremptory strikes, unless such a strike is objected to under *Batson*. *See Lewis v. State*, 911 S.W.2d 1, 4 (Tex. Crim. App. 1995); *see also* TEX. CODE CRIM. PROC. ANN. art. 35.14 ("A peremptory challenge is made to a juror without assigning any reason therefor.").

---

[3] Veniremembers were not asked to identify their race in the questionnaires.

Raising a *Batson* challenge involves a three-step process. *Batson*, 476 U.S. at 96–98. First, the defendant must make a prima facie showing by pointing to relevant circumstances that give rise to an inference of purposeful discrimination. *Nieto v. State*, 365 S.W.3d 673, 676 (Tex. Crim. App. 2012) (citing *Batson*, 476 U.S. at 96–97). If the defendant makes the requisite showing, the burden shifts to the prosecutor to articulate a neutral explanation for the strike. *Id.* (citing *Batson*, 476 U.S. at 97–98). Finally, the trial court must determine if the defendant has proven purposeful discrimination. *Id.* (citing *Batson*, 476 U.S. at 98).

The trial court may look to a number of factors when deciding whether a facially neutral explanation was genuine or merely pretextual. *Miller–El v. Dretke*, 545 U.S. 231, 240–63 (2005). One of these factors is the disparate treatment of veniremembers. *Watkins v. State*, 245 S.W.3d 444, 448–49 (Tex. Crim. App. 2008). For example, if the reason a prosecutor gives for striking an African American veniremember applies equally to a non-African American member allowed to serve on the jury, that fact is evidence tending to show disparate treatment. *See Miller–El*, 545 U.S. at 232. Another factor that may indicate purposeful discrimination is the extent to which the record contradicts the prosecutor's explanation for the strike. *See Greer v. State*, 310 S.W.3d 11, 18 (Tex. App.—Dallas 2009, no pet.) ("[T]he State's reliance on an explanation that is contradicted by the record is persuasive evidence that its stated reason for striking [a veniremember] was pretextual.").

Appellate courts review a trial court's ruling on a *Batson* challenge for clear error, focusing on the genuineness rather than the reasonableness of the prosecutor's

4

explanation. *Nieto*, 365 S.W.3d at 676 (citing *Gibson v. State*, 144 S.W.3d 530, 533–34 (Tex. Crim. App. 2008)). We will not reverse a trial court's *Batson* ruling unless we are left with a firm conviction that a mistake was made. *Harris v. State*, 827 S.W.2d 949, 955 (Tex. Crim. App. 1992) (citing *Williams v. State*, 804 S.W.2d 95, 101 (Tex. Crim. App. 1991)). The evidence offered at trial is viewed in the light most favorable to the trial court's ruling. *Williams*, 804 S.W.2d at 101. The trial court's ruling is entitled to great deference because the trial court is often required to make credibility determinations that it is uniquely positioned to assess. *Alexander v. State*, 866 S.W.2d 1, 8 (Tex. Crim. App. 1993).

While we cannot substitute our judgment for that of the trial court, we are not limited to the specific arguments presented at trial. *Id.* Indeed, we review the voir dire record in its entirety. *Watkins*, 245 S.W.3d at 448.

### III. ANALYSIS

Although the State contends that Doyle did not make a prima facie showing of purposeful discrimination, it acknowledges that "[t]he trial court did not consider or rule upon the issue of whether [Doyle] had established a *prima facie* case of racial discrimination, but simply called upon the State for a response." When the State offers a neutral explanation before the trial court makes a ruling on the prima facie case, step one of the process is rendered moot. *Watkins*, 245 S.W.3d at 447 (citing *Hernandez v. New York*, 500 U.S. 352, 359 (1991)); *Simpson v. State*, 119 S.W.3d 262, 268 (Tex. Crim. App. 2003) (citing *Johnson v. State*, 68 S.W.3d 644, 648 (Tex. Crim. App. 2002)). Accordingly,

5

we proceed to steps two and three. *See Watkins*, 245 S.W.3d at 447; *Simpson*, 119 S.W.3d at 268.

Having carefully examined the record, we conclude that the trial court's finding of no purposeful discrimination is supported by the record and is not, therefore, clearly erroneous. The prosecutor's explanations for his peremptory strikes were racially and gender neutral, logically related to the case to be tried, and based directly on the responses of the veniremembers in question. *See Tennard v. State*, 802 S.W.2d 678, 681–82 (Tex. Crim. App.1990) (expressing "opposition or reservations about the death penalty" constitutes a racially neutral justification for exercising a peremptory strike); *DeBlanc v. State*, 799 S.W.2d 701, 712–13 (Tex. Crim. App.1990) (holding the State to an excessive burden of proof constitutes a racially neutral justification for exercising a peremptory strike); *Davis v. State*, 964 S.W.2d 352, 355 (Tex. App.—Fort Worth 1998, no pet.) (having a prior bad experience with police constitutes a racially neutral justification for exercising a peremptory strike); *Whitaker v. State*, 977 S.W.2d 869, 876 (Tex. App.—Beaumont 1998, pet. ref'd) (being falsely accused of a crime constitutes a racially neutral justification for exercising a peremptory strike); *see also Purkett v. Elem*, 514 U.S. 765, 768 (1995) (per curiam) ("Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral."). To the extent that these veniremembers were rehabilitated, the State was entitled to assume that they remained adverse to the State's interests based on their initial responses. *See Johnson*, 68 S.W.3d at 649. Finally, having conducted a comparative analysis while viewing the evidence in the light most favorable to the trial court's decision, we cannot form a firm

conviction that the State treated the veniremembers disparately. *See Miller–El*, 545 U.S. at 232; *Watkins*, 245 S.W.3d at 448–49. We overrule Doyle's sole issue.

### IV. CONCLUSION

The judgment is affirmed.

GREGORY T. PERKES
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
23rd day of April, 2020.